## SOUTHWESTERN TRANSP. CO. v. MEDLEY.

### No. 1490.

Court of Civil Appeals of Texas. Waco.
May 3, 1934.

Rehearing Denied May 31, 1934.

King, Mahaffey, Wheeler & Bryson, of Texarkana, for appellant.

Jones & Jones, of Marshall, Ben A. Harper, of Tyler, and Wm. V. Brown, of Texarkana, for appellee.

ALEXANDER, Justice.

This action was brought by James Medley against Southwestern Transportation Company to recover damages for personal injuries sustained by plaintiff as the result of a collision between one of the defendant's busses and an automobile ridden in by plaintiff and driven by Verba Cruze. The verdict of the jury was favorable to the plaintiff, and accordingly judgment was entered for the sum of $9,000. The defendant appealed.

The appellant assigns as error the failure of the court to grant a new trial on account of alleged misconduct of the jury. The case was submitted to the jury on twenty-two special issues, said issues and the jury's answers thereto being, in effect, as follows:

"(1) Was defendant's bus being operated on the left side of the street at the time of the collision? Ans. Yes. (2) Was this the proximate cause of the collision? Ans. Yes. (3) Did the driver of the bus fail to give one-half of the street? Ans. Yes. (4) Was this a proximate cause of the collision? Ans. Yes. (5) Was the bus being driven faster than fifteen miles per hour? Ans. Yes. (6) Was this a proximate cause of the collision? Ans. Yes. (7) Did the driver of the bus operate same on the north or left side of the street? Ans. Yes. (8) Was this a proximate cause of the collision? Ans. Yes. (8a) Was this negligence? Ans. Yes. (9) Was Verba Cruze driving the automobile in which plaintiff was riding on the left or south side of the street? Ans. No. (10) Was the collision caused solely by the driving of the automobile on the south side of the street? Ans. No. (11) Was Verba Cruze driving on the south side of the center of the street? Ans. No. (12) Was this a proximate cause of the collision? Ans. No. (13) Was plaintiff negligent in riding in the automobile while it was operated on the south side of the street? Ans. No. (14) Did plaintiff discover the bus in time to warn Verba Cruze and avoid the collision? Ans. No. (16) Was the failure to so discover the bus a proximate cause of the collision? Ans. No. (17) Was the driver of the bus caused to swerve same to the left in order to avoid what appeared to be an imminent danger of a collision? Ans. No. (18) Would a prudent man have so swerved the bus to the left? Ans. No. (19) Was the collision caused solely by the manner in which Verba Cruze was driving the automobile? Ans. No. (19a) What amount of damages did plaintiff sustain? Ans. $9,000.00."

The trial court heard evidence as to misconduct of the jury, and, in response to a request from the defendant, filed findings of fact in which it was found that, after the jury retired to consider the verdict, they first took a vote as to who was to blame for the collision, the vote being unanimous against the driver of the bus; that they then discussed the first nine issues and voted on them separately. The court further found as

follows: "That the remainder of the issues submitted, except the last issue dealing with the amount of damages, were read over and discussed by the jury, one at the time, after which a vote was taken as to whether all such questions should be answered 'yes' or 'no', and that the jury voted to answer said questions 'no'; * * * that there was no agreement by the jury, in advance of answering any question, that same should be answered in such way as to give either side a verdict, and that there was no endeavor, on the part of the jury, in answering the issues submitted, to secure a judgment in the cause, for one party or the other, but that same were answered from the evidence; * * * that when the jury came to issue nine, it was suggested by some juror, after said issue was answered 'no', that the remaining questions should be answered 'no' to avoid a conflict with the answer to issue No. 9, inasmuch as the remaining questions after number nine, hinged on number nine." The record discloses that seven of the nine jurors who were called as witnesses on the motion for new trial, testified that after the issues from 1 to 8a, inclusive, had been answered, it was then stated and discussed among the jurors that it would be necessary for the jury to answer all of the remaining issues "No" in order to prevent their verdict "being crossed up." The other two jurors could not remember whether or not this matter was discussed. All of the witnesses testified that the issues following 8a were not voted on separately, but that the vote was taken as to whether all of said issues should be answered "Yes" or all of them answered "No." The jury voted "No" and the issues were so answered.

Revised Statutes, art. 2189, provides, in part, as follows: "Such special issues shall be submitted distinctly and separately. Each issue shall be answered by the jury separately." According to the findings of the trial court, the jury did not answer each of the issues submitted to them separately, but grouped the last nine issues and voted on them as a whole. It has been held in many instances that it is error for the trial court to fail to submit the issues distinctly and separately. For the same reason it would appear to be reversible error for the jury to fail to answer the issues separately. To allow the jury to group the issues as was done in this case and lop them off by a single vote as to whether they should all be answered "Yes" or all be answered "No" would, in effect, render the above-quoted provision of the statute nugatory. The jury's conduct in this respect requires a reversal of the case. Abrams v. Bradshaw (Tex. Civ. App.) 2 S.W.(2d) 917; Bradshaw v. Abrams (Tex. Com. App.) 24 S.W.(2d) 372; Dallas Railway & Terminal Co. v. Garrison (Tex. Com. App.) 45 S.W.(2d) 185.

We think it was likewise improper for the jury to answer the second group of questions "No" in order to prevent a conflict with their answers to the first group of issues. From the evidence before us there is no escape from the conclusion that at least several of the jurors in voting to answer all of the second group of issues "No" did so for the express purpose of avoiding a conflict with the answers given to the first nine issues. The object of the law is to have the jury answer each issue according to the facts and without regard to its effect on the answer to any other issue or the general outcome of the case, and when the jury abandons this purpose and gives a particular answer to one issue merely to avoid a conflict with the answer given to another issue, the purpose of the law is defeated and the parties are denied a fair trial in accordance with the law. Simmonds v. St. Louis B. & M. Ry. Co. (Tex. Com. App.) 29 S.W.(2d) 989.

We think it clear both from the findings of fact and the evidence introduced that the appellant did not receive a fair trial and that the judgment of the trial court must therefore be reversed. The other errors assigned will not likely arise in the same manner upon another trial. Hence we do not discuss the other assignments.

The judgment of the trial court is reversed and the cause remanded for a new trial.