Mrs. Johnnie Mae BUCHANAN, a Widow et al., Appellants,

v.

CENTRAL FREIGHT LINES, INC. et al., Appellees.

No. 17526.

Court of Civil Appeals of Texas, Dallas.

Dec. 31, 1970.

Rehearing Denied Jan. 29, 1971.

Otto B. Mullinax, Mullinax, Wells, Mauzy & Collins, Dallas, for appellants.

Ralph E. Hartman, Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellees.

BATEMAN, Justice.

This is a suit for damages on account of the death of Lewis James Buchanan, alleged to have been proximately caused by the negligence of appellee Central Freight Lines, Inc. and its driver. The appellants are the surviving wife, son and mother of Lewis James Buchanan. Buchanan was driving a 1962 two-door hardtop Chevrolet automobile, with three passengers, in a southerly direction on Interstate Highway 35 near Temple, Texas, when it collided with a van-type trailer attached to a tractor owned by Central Freight Lines, Inc. and operated by its employee, Harold L. Thompson. The trailer was being pulled in a westerly direction across Interstate Highway 35 and was in the outside lane thereof when the Chevrolet struck it at about the middle of the right side. The entire top of the Chevrolet was sheared off and it passed completely under the trailer, proceeding an additional 100 feet south. Buchanan and two of his passengers were killed.

In answer to special issues the jury acquitted Thompson of the only two alleged acts of his negligence inquired about in the charge, and found the decedent, Buchanan, guilty of contributory negligence in failing to keep a proper lookout, in failing to timely apply the brakes on his vehicle immediately before the collision, and in driving his vehicle at a greater rate of speed than a reasonable and prudent person would have driven it under the same or similar circumstances, all of which

proximately caused the collision. The jury answered "None" to all of the damage issues, except as to the damage to the Chevrolet. Judgment was rendered on the verdict that appellants take nothing.

The collision occurred on the morning of January 31, 1966 at about eight o'clock. A light rain or mist had caused the pavement to be wet. Appellants relied altogether on circumstantial evidence to prove the facts of the collision and the conduct of the participants therein.

When appellants rested without offering any expert testimony on accident analysis, appellees offered the testimony of their only witness, one A. O. Pipkin, a professional accident investigator and analyst, who testified that, based upon his investigation, scientific analysis and experience in such matters, the Chevrolet automobile was traveling in excess of 80 miles per hour when its brakes were first applied and that after laying down skidmarks on the pavement extending 204 feet from that point to the point of impact * it was traveling at approximately 60 miles per hour when it struck the trailer. He also testified that he went upon the scene of the accident on November 14, 1967 and conducted some experiments and tests with a truck-tractor like the one involved in the accident, and testified at some length in an effort to reconstruct the actions of Thompson in driving the truck-tractor. However, on motion of appellants all of his testimony concerning the tests that he made in that respect, and his opinions based thereon, was stricken and the jury instructed not to consider it.

In their first, second and third points of error the appellants complain of the court's action in admitting Pipkin's opinion testimony as to the speed of the Buchanan vehicle before its brakes were applied. The third point complains specifically of the court's action in permitting Pipkin to answer a hypothetical question by stating his opinion as to the speed of the Buchanan vehicle before its brakes were applied. This question was objected to on the ground that it assumed facts not in evidence, such as the kind of pavement, the kind of tests the witness had made, and because it did embrace his statement of the "coefficient of friction" which the witness had said was indispensable to his calculation, but the question embraced no fact or circumstance to establish what the coefficient of friction was, how it was arrived at or on what basis it existed. These objections were overruled and the witness permitted to testify that the speed of the Buchanan vehicle before the brakes were applied was in excess of 80 miles per hour.

The witness Pipkin then explained in great detail the manner in which he arrived at his opinions, including an assumed coefficient of friction for asphalt pavement which is wet but not frozen, which he said was .50. Certain photographs were in evidence which had been taken shortly after the collision and which showed the pavement to be wet.

After appellees rested appellants moved the court to instruct the jury to disregard Pipkin's testimony relating: (1) to any coefficient of friction or the existence thereof at the scene; (2) to any opinion as to the speed of the Chevrolet being 80 miles per hour; (3) to any opinion as to its speed at the time of impact; or (4) to any opinion as to its speed after it passed under the truck. The trial court's action in overruling this motion is complained of in the fourth, fifth, sixth and seventh points of error.

We see no merit in any of these first seven points. In our opinion, Pipkin's testimony complained of was admissible and the objections thereto went to its weight rather than its admissibility.

---

* The length of the skidmarks had been measured by the investigating officer, Jack T. Gibson, who arrived at the scene a few minutes after the collision, and who testified by deposition taken October 19, 1967.

■ With respect to appellants' objection to the hypothetical question propounded to Pipkin, it is not essential that such a question embrace every fact in evidence. The counsel propounding the question may assume, within the limits of the evidence, that state of facts which he deems justified by the evidence and which enables the witness to formulate an intelligent opinion. Any facts omitted from the question may be embodied in the cross-examination of the witness, and under the applicable authorities it was appellants' duty to challenge on cross-examination the facts assumed on direct examination. Shuffield v. Taylor, 125 Tex. 601, 610, 83 S.W.2d 955, 960 (1935); Gulf, C. & S. F. Ry. Co. v. Compton, 75 Tex. 667, 13 S.W. 667 (1890); Foreman v. Texas Employers' Ins. Ass'n, 150 Tex. 468, 241 S.W.2d 977 (1951); Aetna Casualty & Surety Co. v. Scruggs, 413 S.W.2d 416, 422 (Tex.Civ.App., Corpus Christi 1967, no writ) and other cases cited therein.

■ The main thrust of appellants' complaint as to Pipkin's testimony seems to be that, although the witness testified that the coefficient of friction was an essential element to be considered in calculating the speed of a vehicle, he was permitted to make that calculation without knowing, but merely assuming, what the coefficient of friction was. It is argued that he should have made tests, as the witness Carlisle did, to determine the matter rather than assuming or guessing at it. The witness stated that since the pavement was wet, as was obvious from the photographs in evidence, he used a "pretty well standard" coefficient of friction for pavement which is wet but not frozen—"a coefficient of friction for wet asphalt," which is .50. He said this was the lowest coefficient of friction he could use with respect to a pavement that was wet but not "icy." We think the trial court correctly overruled the objections and the motion, properly leaving to appellants the opportunity and duty to destroy or minimize the effect of the opinion testimony, if they could, by cross-examination

or by adducing evidence to the contrary. See Charles T. Picton Lumber Co. v. Redden, 452 S.W.2d 713, 721 (Tex.Civ.App., Corpus Christi 1970, writ ref'd n. r. e.).

■ Furthermore, it would appear that appellants' complaints, concerning the overruling of their objections to Pipkin's testimony and their motion to strike, have not been properly preserved for review. Their assignments of error in their amended motion for new trial merely state that the court erred in admitting the testimony "over the objections of plaintiffs," and in denying the motion, without stating the grounds of either. Rule 374, Vernon's Texas Rules of Civil Procedure, provides that a ground of error not distinctly set forth in the motion for new trial "shall be considered as waived." In J. Weingarten, Inc. v. Moore, 449 S.W.2d 452, 453 (Tex.1970), our Supreme Court held that an "objection to an error of the trial court is not preserved by mere reference in the motion for new trial to a prior motion, even though the prior motion did make a particular objection clear and certain. The motion for new trial must itself specify each ground of error to be preserved. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965); Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960)." Accordingly, we hold that the complaints were waived.

■ Moreover, even if either or both of the said rulings were erroneous, appellants have not shown that such error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Rule 434, T.R.C.P.; Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277, 281 (1958); Walker v. Texas Employers' Ins. Ass'n, 155 Tex. 617, 291 S.W.2d 298, 301 (1956). As stated, the jury acquitted appellees of both acts of negligence charged against them and found Buchanan guilty of three separate acts of contributory negligence. To be entitled to a reversal, appellants must set aside at least one of the findings of no primary negligence and all three of the contribu-

tory negligence findings and the findings of no damages. The error chiefly complained of is the admission of evidence that Buchanan was driving at a speed of 80 miles per hour when he applied his brakes. Appellants are under the burden of showing, not only that this evidence was erroneously admitted, but that it influenced the jury to make findings they would not otherwise have made, not only upon the issue of Buchanan's speed, but on the other controlling issues as well, not one of which even mentions Buchanan's speed.

There was no jury finding that Buchanan was going 80 miles per hour, or at any other specific rate of speed, only that he was driving his car "at a greater rate of speed than a reasonable and prudent person would have driven it under the same or similar circumstances." Appellants lay great emphasis on Pipkin's testimony and argue that it must have persuaded the jury, not only to answer the speed issue as they did, but also to answer all other issues in such manner as to assure a judgment for the defendants. We find in the record no support for the latter argument. As to the speed issue, there was other testimony which, to our minds at least, was much more likely to induce the finding on speed than was Pipkin's testimony. For instance, there was undisputed evidence that the weather was foggy or misty, that visibility was poor, that the highway was wet, but that nevertheless Buchanan "shot out of the fog" with his lights off and at such a rate of speed that, even after depositing 204 feet of skidmarks, his car struck the trailer with sufficient force to shear off the top of the Chevrolet and proceed completely under the trailer and 100 feet beyond it. This evidence alone, quite aside from Pipkin's testimony, would strongly support, if not compel, a finding that Buchanan was not driving at a reasonable and prudent rate of speed under the circumstances. Therefore, in our opinion, appellants have failed to carry the burden, imposed on them by Rule 434, T.R.C.P., of showing that the alleged error "was reasonably calculated to

cause and probably did cause the rendition of an improper judgment."

Even if it could be said that Pipkin's testimony did materially influence the jury to make the finding it did with respect to Buchanan's speed, how can it be said that, but for such testimony, the jury would have made different findings with respect to Thompson's alleged primary negligence, or with respect to Buchanan's failure to keep a proper lookout, or his failure timely to apply his brakes? In our opinion, appellants failed in this respect also to show that the claimed error was harmful. See Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806 (1958) and Flores v. Missouri-Kansas-Texas R. R. Co., 365 S.W.2d 379 (Tex.Civ. App., Dallas 1963, writ ref'd n. r. e.).

Appellants' first seven points of error are overruled.

In Points of Error 8, 9, 10 and 11 appellants complain of the exclusion of part of the testimony of their expert witness, J. B. Carlisle. He was also an accident investigator and analyst, who testified that at the request of appellants' counsel he had gone to the scene of the collision in February, 1969, on a day when the pavement was wet, and conducted several tests with an automobile to try to determine the proper coefficient of friction upon which to base his opinion as to the speed of the Buchanan vehicle. Appellees objected to his testimony concerning such tests on the ground that his investigation took place more than three years after the accident and it was not shown that the condition of the surface of the pavement was similar to its condition at the time of the collision, which objection was sustained. However, the witness was thereafter permitted to testify in elaborate detail as to his opinions, based upon the same coefficient of friction which had been used by the witness Pipkin, which he was asked to assume, and he testified that in his opinion the Buchanan vehicle was traveling about 60 miles per hour when the brakes were applied, and about 25 miles per hour when it struck the

trailer, and 12 miles per hour when it came out from under it.

If permitted to do so, Carlisle would have testified that he made three tests within 200 feet of the point of impact and one on the very point of impact at a speed of 29 miles per hour and that his car skidded an average of 87.33 feet for the three tests, which gave a coefficient of friction of .32; that in his opinion the Buchanan car was traveling 50 miles per hour when its brakes were applied, based upon the coefficient of friction derived from his said tests.

The appellees' expert witness, Pipkin, had previously undertaken to testify as to certain experiments he had made at the scene some 22 months after the collision, to show that the truck-trailer took several seconds to travel from a yield sign to the point of impact. Appellants objected on the ground that, although the truck used by Pipkin in the experiment was the same kind as that driven by Thompson, it was not the identical truck involved in the collision. The court sustained the objection. This testimony was excluded for the same reason Carlisle's experiments were excluded —conditions were not shown to be the same. The rulings were consistent with each other and with the rule announced by the Supreme Court in Fort Worth & Denver Ry. Co. v. Williams, 375 S.W.2d 279, 281–282 (Tex.1964), and Kainer v. Walker, 377 S.W.2d 613, 616 (Tex.1964).

Moreover, if Carlisle's testimony concerning his experiments was erroneously excluded, the error was harmless. In the first place, this excluded evidence pertained only to Buchanan's speed and there was no showing that it was calculated to cause and probably did cause improper answers to the other controlling issues which were answered against appellants.

In the second place, Carlisle was permitted to testify that he believed the .50 coefficient of friction used by Pipkin was too high. He was then permitted to make his estimate of Buchanan's speed, using the same coefficient, and based thereon expressed the opinion that the Chevrolet was going 60 miles per hour when its brakes were applied. The trial court's refusal to permit him to testify to a speed of 50 miles per hour was, in our opinion, not so prejudicial as to cause an improper answer to the issue inquiring as to Buchanan's speed. These points are overruled.

By their twelfth and thirteenth points of error appellants complain of the exclusion of evidence of the driving record of Lewis James Buchanan and testimony of his widow that he habitually drove his automobile at a speed within the posted speed limits. They offered a certificate of an official of the Texas Department of Public Safety showing that in the years 1945 and 1948 Buchanan was convicted of four minor traffic violations, but of no violations of any sort from June 15, 1948 until his fatal accident of January 31, 1966. The evidence showed that he was in California from 1960 until the end of 1965. The certified copy was objected to on the grounds that there was an eyewitness to the collision and also because it did not attempt to shed light on any particular issue in this case. This objection was sustained. When Mrs. Buchanan, the widow, was on the stand she was asked by appellants' counsel if she could describe whether or not Buchanan was a safe and careful driver with respect to speed and honoring speed limit signs. This was objected to as being immaterial and irrelevant to any issue before the court and was not competent evidence of what took place at the particular time. This objection also was sustained.

In Missouri-Kansas-Texas R. R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 942 (1956), our Supreme Court expressly held that "habit evidence should not be admitted where there is an eyewitness to the accident, even though the eyewitness be an employee of the opposite party." This rule was quoted and upheld by this court in Nutter v. Dearing, 400 S.W.2d 346, 351 (Tex. Civ.App., Dallas 1966, writ ref'd n. r. e., 402 S.W.2d 889). The Supreme Court

opinion refusing the application for writ of error, no reversible error, reaffirms its opinion in *McFerrin* that evidence of a person's habits could not be admitted to prove care or negligence when there was an eyewitness to an accident, but points out that it was not a holding that evidence of a person's habits was inadmissible where there was an eyewitness to an accident and the evidence was offered for purposes other than to prove care or negligence.

Therefore, since the appellee Thompson was an eyewitness to the accident, we hold that the certified copy of Buchanan's driving record and his widow's testimony concerning his good driving habits were inadmissible and the objections thereto properly sustained.

 Furthermore, with respect to Mrs. Buchanan's proffered testimony, we find in the record no bill of exceptions disclosing what the witness would have testified if the objection had not been sustained. Therefore, no error is disclosed. J. Weingarten, Inc. v. Brockman, 134 Tex. 451, 135 S.W.2d 698 (1940).

Accordingly, the twelfth and thirteenth points of error are overruled.

In appellants' fourteenth point of error, it is stated that the accumulation of errors concerning the admission and exclusion of evidence denied them a fair trial. No such assignment appears in their amended motion for new trial, and the alleged error is not therefore preserved for review by this court. Rule 374, T.R.C.P. Moreover, as hereinabove pointed out, the various rulings complained of were in our opinion not erroneous. The fourteenth point of error is overruled.

In appellants' points of error numbered 15 through 29 they assert that the various jury findings adverse to them are without support in the evidence and against the overwhelming weight and preponderance of the evidence. It would unduly extend the length of this opinion for us to recite, even in summary form, all of the evidence bearing on these findings. We have carefully studied the entire record and are firmly of the opinion that there was ample evidence to support each of those findings, with the possible exception of those pertaining to damages. What evidence there was on the latter issues was quite meager, and the jury had a right not to believe any of it. Moreover, since there was ample evidence to support the findings of no primary negligence, as well as of Buchanan's contributory negligence, the damage findings are immaterial. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334 (1939); Mowat v. Stimson, 449 S.W.2d 827, 831 (Tex.Civ.App., Dallas 1969, no writ). Accordingly, these points of error are also overruled.

The judgment appealed from is affirmed.